**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandra Division**

| | | |
|---|---|---|
| ANTHONY W.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-400-RDA-LRV |
| | ) | |
| FRANK J. BISIGNANO,[2] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Summary Judgment, (Dkt. No. 7),

and Defendant's Motion for Summary Judgment, (Dkt. No. 12) (collectively, the "Motions for

Summary Judgment"), and the related briefing (Dkt. Nos. 8, 13, 14, 16). Pursuant to 42 U.S.C.

§ 405(g) and 42 U.S.C. § 1383 (c)(3), Anthony W. ("Plaintiff") seeks judicial review of the final

decision of the Commissioner of the U.S. Social Security Administration ("Commissioner" or

"Defendant"), denying his claim for disability insurance benefits ("DIB") and Supplemental

Security Income ("SSI") under the Social Security Act. The Commissioner's final decision is

based on a finding by the Administrative Law Judge and Appeals Council for the Office of

Appellate Operations ("Appeals Council") that Plaintiff was not disabled as defined by the Social

Security Act and applicable regulations. For the reasons stated below, the undesigned recommends

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Frank Bisignano has served as the Commissioner of the United States Social Security Administration since May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Bisignano should be named as the defendant in this suit. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

that the Court **DENY** Plaintiff's Motion for Summary Judgment, **GRANT** Defendant's Motion

for Summary Judgment, and **AFFIRM** the final decision of the Commissioner.[3]

## I.    PROCEDURAL BACKGROUND

On October 12, 2021,[4] Plaintiff applied for DIB and SSI with an alleged onset date of July

1, 2013 due to the following self-reported impairments: degenerative disc disease, a pinched nerve,

leg nerve issues, chronic pain, unable to sit, leg issues, and a back injury from an accident in

October 2009. (AR 229–39, 250.) During the underlying proceedings, counsel for Plaintiff

amended Plaintiff's alleged disability onset date from July 1, 2013, to September 1, 2017.[5] (AR

49–50.) Plaintiff further explained that he was last insured on December 31, 2017. (AR 20.) The

Social Security Administration ("SSA") denied Plaintiff's application initially and upon

reconsideration. (AR 97–132.)

On October 19, 2023, at Plaintiff's request, administrative law judge M. Krasnow ("ALJ")

conducted a hearing to consider his eligibility for disability benefits. (AR 43–70.) During the

hearing, Plaintiff and a vocational expert provided testimony and answered questions posed by the

ALJ. (*Id.*) On January 16, 2024, the ALJ issued a decision finding that Plaintiff was not disabled

within the meaning of the Social Security Act from September 1, 2017 onwards. (AR 17–38.)

Plaintiff requested that the Appeals Council review the ALJ's decision, and on January 3, 2025,

---

[3] The Administrative Record ("AR") in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). (*See* Dkt. No. 5.) In accordance with those rules, this recommendation excludes any personal identifiers such as Plaintiff's social security number and date of birth (except for the year of birth). The discussion of Plaintiff's medical information is limited to the extent necessary to analyze the case.

[4] The record supports that Plaintiff applied for benefits on October 12, 2021 and the parties agree on that date. (*See* Dkt. No. 8 at 1; Dkt. No. 13 at 3.) However, for completeness, the undersigned notes that the ALJ's decision states that Plaintiff applied for benefits on September 17, 2021. (*See* AR 17.)

[5] Plaintiff previously applied for, and was denied, DIB and SSI benefits in an ALJ decision dated August 29, 2017. (AR 74–84.) Plaintiff attempted to appeal that ALJ's decision, but the Appeals Council denied Plaintiff's request for review. (AR 96.) Plaintiff then filed a civil suit in this Court, which was dismissed for failure to prosecute under Rule 4(m) of the Federal Rules of Civil Procedure. (AR 96; *see also* Order, Dkt. No. 6, *Wilson v. Commissioner of Social Security*, No. 1:18-cv-840 (Mar. 6, 2019).)

the Appeals Council denied Plaintiff's request, finding no reason under its rules to review the ALJ's decision. (AR 1–5.)   Accordingly, the ALJ's decision became the Commissioner's final decision and Plaintiff had sixty days to file a civil action challenging the decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

On March 4, 2025, Plaintiff timely filed this civil action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383 (c)(3). (Dkt. No. 1.) On May 8, 2025, Defendant filed the Administrative Record. (Dkt. No. 5.) On June 9, 2025, Plaintiff filed his Motion for Summary Judgment and a memorandum in support thereof. (Dkt. Nos. 7, 8.) On July 16, 2025, after the Court granted a brief extension (Dkt. No. 11) Defendant filed an opposition to Plaintiff's Motion for Summary Judgment, (Dkt. No. 14), and a Cross-Motion for Summary Judgment, (Dkt. Nos. 12, 13). On July 30, 2025, Plaintiff filed a reply. (Dkt. No. 16.) Neither party requested a hearing. (*See* Dkt. No. 15.) The parties' Motions for Summary Judgment are thus ripe for disposition.

## II.    **FACTUAL BACKGROUND**

Plaintiff's Section 405(g) and 42 U.S.C. § 1383 (c)(3) claims hinge on whether the ALJ properly addressed Plaintiff's need for an assistive device (e.g., a cane) to maintain his balance when walking and standing. Plaintiff argues that if the ALJ had considered his need for an assistive device, then the ALJ would have concluded that Plaintiff was disabled. (Dkt. No. 8 at 9–10.). Accordingly, rather than recount Plaintiff's entire medical history, the discussion herein is limited to the underlying lumbar spine and lower extremity conditions that allegedly necessitated Plaintiff's use of an assistive device. [6]

---

[6] The AR contains more than 600 pages of medical records from various sources relating to Plaintiff's medical treatments. This summary provides an overview of Plaintiff's medical treatments and conditions relevant to his appeal and is not intended to be an exhaustive list of every medical treatment.

3

A.    **Summary of Evidence Before the ALJ**

The following is a summary of the relevant evidence before the ALJ. Plaintiff is forty-eight-year-old man who suffers from several medical conditions, including morbid obesity and back issues that cause him pain. (AR 46–51, 341, 432, 634.) Plaintiff has not worked or applied to any jobs since September 2017. (AR 51.) To review the Commissioner's final decision regarding Plaintiff's eligibility for disability benefits, this Court first considers the denial of DIB by looking to the medical records from September 1, 2017 through December 31, 2017, and for the denial of SSI, the relevant period is September 1, 2017 through January 16, 2024.[7] (AR 111.)

1.    Relevant Medical Record

On October 17, 2017, Hajeer Sabet, M.D. treated Plaintiff for his lower back pain and reviewed Plaintiff's lumbar spine magnetic resonance imaging ("MRI"). (AR 341.) Dr. Sabet found that Plaintiff suffered from degenerative changes of the spine and L5-S1 spinal stenosis, which may require bariatric surgery. (*Id.*) To address those conditions, Dr. Sabet recommended weight loss, physical therapy, pain medication, and a six-week follow up. (AR 341–42.) Plaintiff chose not to proceed with bariatric surgery and there is no record of him returning for a follow-up appointment with Dr. Sabet. (*Id.*) Nor is there evidence in the record that Plaintiff sought any medical treatment from other providers between September 1, 2017 and December 31, 2017.

On October 8, 2018, Plaintiff presented to the University of Virginia Spine Center for lower back pain, noting mild relief with nonsteroidal anti-inflammatory medication, a muscle relaxer, and physical therapy. (AR 370.) Upon assessing Plaintiff, Rosemarie Tyger, PA-C, found that

---

[7] The SSA's DIB program is similar to other insurance programs in that, to qualify, a claimant must have coverage, (i.e., be fully insured), at the time of disability. 42 U.S.C. § 423(a), (c); 20 C.F.R. §§ 404.101(a), 404.131(a). The coverage period for an individual extends to his date last insured, which is the last day he is eligible for DIB. *Id.* Accordingly, for purposes of DIB, Plaintiff must prove that he was disabled from his amended alleged onset date (September 1, 2017) until the date last insured (December 31, 2017) in order to qualify for DIB. However, for SSI, the relevant end date is when the ALJ issues the decision on the disability benefit applications.

Plaintiff was in no acute distress and his gait was normal. (AR 371.) Specifically, he "[a]mbulate[d] with a normal gait without any assistive devices," displayed normal heel and toe gait, and walked with a normal tandem gait without evidence of ataxia. (*Id.*) Plaintiff also had no palpable tenderness in his lumbar spine, he had full lumbar extension without pain, and full (five out of five) motor strength and intact sensation throughout his lower extremities. (AR 372.) On November 8, 2018, at a follow-up appointment to review his lumbar spine MRI results, PA-C Tyger found that Plaintiff had mild degenerative disc disease and lumbar facet arthropathy, which PA-C Tyger recommended that Plaintiff treat by pursuing pain management, anti-inflammatory medicine, and physical therapy. (AR 368–69).

On January 11, 2019, Plaintiff attended a consultation with Simon Willis, M.D. from the University of Virginia Pain Management Center. (AR 362.) Dr. Willis observed Plaintiff was ambulatory with the assistance of a single-point walking cane. (AR 364.) After asking about Plaintiff's prior use of pain medication and physical therapy, Dr. Willis advised Plaintiff to wean his use of opioid medication, and instead take Topamax, acetaminophen, and diclofenac. (AR 365–66.) Dr. Willis noted that interventional procedures like medial branch blocks were "logistically possible" only if Plaintiff lost sufficient weight and Plaintiff confirmed he would continue his efforts to lose weight. (AR 366.)

On February 7, 2019, Plaintiff saw PA-C Tyger once more to discuss his treatment options, including the use of a medial branch block. (AR 359–61.) At that appointment, PA-C Tyger noted that Plaintiff was walking with a "[s]table gait without assistive devices." (AR 360 (emphasis omitted).) PA-C Tyger recommended that Plaintiff continue with pain management and consider more significant interventions just short of surgery. (AR 361–62.) Plaintiff expressed that he

required additional time to consider how he would like to proceed but there is no record of further visits with any medical providers at the University of Virginia Spine Center. (*Id.*)

On November 28, 2021, while in the Mount Vernon Hospital emergency room for mild chest pain, (AR 386), Plaintiff mentioned that he suffered from chronic back pain but denied gait problems and the medical staff determined that Plaintiff displayed a normal range of motion, motor strength, and normal neurological functioning. (AR 395–96.) On December 2, 2021, during a follow-up appointment with Sima Fartash, M.D., Plaintiff reported he no longer had chest pains. (AR 431). Dr. Fartash noted that Plaintiff "walks with [a] cane" but did not otherwise assess Plaintiff's gait or ability to ambulate without an assistive device. (AR 432.)

From 2017 to 2023, Plaintiff also sought treatment from James Roberson, M.D. for his back pain and numbness. (AR 522–23.) On April 7, 2022, during a virtual consultation, Dr. Roberson found that Plaintiff's ambulation was limited and that Plaintiff was unable to stand for a significant period of time. (*Id.*) Dr. Roberson then prescribed certain pain management medications. (*Id.*) Plaintiff continued to see Dr. Roberson approximately every two to four months via telehealth visits for pain medication refills. (*See* AR 524–25 (Aug. 2022), 622–24 (Feb. 2023, Dec. 2022), 645–46 (Apr. 2023).) In December 2022, Dr. Roberson concluded that Plaintiff's condition was worsening and he was "fully disabled for any meaningful work." (AR 623.)

On March 21, 2023, Plaintiff saw orthopedist David Weiner, M.D., to evaluate his ongoing back pain. (AR 634.) Upon conducting a physical exam, Dr. Weiner found that Plaintiff was tender to palpation in the lumbar spine but had full (five out of five) strength and intact sensation in his lower extremities and negative straight leg raise tests. (AR 635.) Dr. Weiner did not document any gait abnormalities and recommended that Plaintiff continue with pain management. (AR 634–35.)

On August 22, 2023, during an in-person consultation, Dr. Roberson found that Plaintiff had no tenderness to palpation of his lumbar spine but had decreased spinal range of motion "with paraspinal spasm." (AR 663.) Dr. Roberson concluded that "[Plaintiff] deserves and warrants full disability as he is unable to perform his actives [sic] of daily living with any degree[] of ease or comfort." (AR 664.)

### 2. State Agency Medical Opinion Evidence

State agency medical physicians Nicolas Tulou, M.D. and Jack Hutcheson, Jr., M.D. independently reviewed the medical record at the initial and reconsideration administrative levels of review. (AR 97, 105, 117, 126.) Drs. Tulou and Hutcheson found that prior to December 31, 2017, Plaintiff could perform a range of light work that involved lifting/carrying ten pounds frequently and twenty pounds occasionally, standing and/or walking for six hours in a workday and sitting for six hours in a workday, and needed the opportunity to alternate positions every sixty minutes. (AR 100–04, 129–32.) Additionally, considering the medical record post-dating December 31, 2017, Drs. Tulou and Hutcheson agreed that Plaintiff could perform a range of sedentary work that involved lifting/carrying up to 10 pounds, standing and/or walking for two hours in a workday, and sitting for six hours in a workday. (*Id.*)

### 3. Additional Opinion Evidence

On April 2, 2022, approximately six months after Plaintiff applied for DIB and SSI, Faraz Masood, M.D., examined Plaintiff. (AR 513–21). Dr. Masood found that Plaintiff had no palpable tenderness in his lumbar spine; he had a normal range of motion in his spine and lower extremities; and he had full motor strength, sensation, and reflexes in his lower extremities. (*Id.*) During the examination, Dr. Masood also noted that Plaintiff also used the support of the cane to lower himself to sitting position, used a cane sometimes to raise himself to a standing position, and walked with

7

a normal gait when using a cane. (AR 515.) Accordingly, Dr. Masood recorded that Plaintiff "needs cane to support" a normal gait and Plaintiff "use[d] assistive devices" during the physical examination. (*Id.*) Under the "Functional Capacity" portion of his report, Dr. Masood indicated, among other findings, that Plaintiff could "stand for at least 2 hours per workday with usual breaks[,] . . . walk for at least 2 hours per workday with usual breaks," and "sit for at least 6 hours per workday with usual breaks." (AR 516–17.)

On September 5, 2023, Dr. Roberson submitted a document titled "Medical Source Statement" to explain that Plaintiff suffered from lumbar disc disease and lumbar radiculopathy. (AR 682–85.) Dr. Roberson opined that Plaintiff could sit, stand, and walk for less than two hours during an eight-hour workday. (*Id.*) With respect to Plaintiff's ability to stand and walk, Dr. Roberson found that Plaintiff needed an ambulatory aid. (AR 683.)

### 4.    Administrative Hearing Testimony

During the October 19, 2023 hearing before the ALJ, Plaintiff was represented by counsel. (AR 43.) To attend the hearing, Plaintiff used a cane and in response to questioning from the ALJ, Plaintiff testified that he had used the cane for approximately six years and could walk without the cane "[a] little bit when [his] legs [were not] numb or burning." (AR 52.) The ALJ asked Plaintiff "how far or for how long are you able to walk?" and Plaintiff responded that he could walk at best "maybe 10 or 15 feet before I start burning or needles" and that the pain was triggered "with or without" his cane use. (AR 53.)

Vocational expert, Nadine Henzes, also testified during the hearing. With respect to Plaintiff's prior work experience, the vocational expert testified about Plaintiff's work as a collection clerk, which the Social Security Administration classifies as skilled sedentary work, (DOT # 241.357-010). (AR 63.) The ALJ asked the vocational expert to consider an individual

8

with Plaintiff's age, education, and work experience who could perform sedentary work that involved occasional pushing and/or pulling with the bilateral lower extremities, occasional climbing stairs/ramps, balancing, stooping, kneeling, crouching, frequent reaching in all directions, overhead, and laterally with the right upper extremity, frequent handling and fingering bilaterally, no climbing ropes/ladders/scaffolds, and no concentrated exposure to fumes, odors, dusts, gases, and workplace hazards, such as dangerous machinery and unprotected heights. (AR 64.) Dr. Masood testified that such an individual could perform Plaintiff's past relevant work as a collection clerk, and the vocational expert also identified additional unskilled, sedentary occupations that Plaintiff could perform, including an order clerk (DOT # 209.567-014), scanner (DOT # 249.587-018), and label maker (DOT # 585.685-062). (*Id.*)

With respect to those specific occupations identified by the vocational expert, the ALJ asked "[i]f the person required the use of a cane for ambulation which, if any, of those jobs would still remain?" (*Id.*) The vocational expert confirmed "[t]hey would all" remain, including Plaintiff's past roles. (*Id.*) Plaintiff's counsel then pressed the vocational expert on whether the use of a cane would be disqualifying if Plaintiff "needed a cane for not only all ambulation, but also for all standing and so one hand would always be occupied by the cane even when standing" and "the individual would be limited to occasional use of the dominant hand . . . for all handling, fingering[,] and reaching." (AR 66.) Upon consideration of that hypothetical, the vocational expert testified that such constant use of the cane by one's dominant hand would preclude the identified occupations. (*Id.*)

## B.    The ALJ's Decision

The Social Security Act and its implementing regulations place the burden of proving disability on Plaintiff. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be

9

under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are . . . disabled.").

On January 16, 2024, the ALJ issued a decision that Plaintiff was not eligible for disability benefits under the Social Security Act. (AR 17–38.) Specifically, the ALJ concluded that Plaintiff was not eligible for DIB based on the medical records from September 1, 2017 to December 31, 2017, and that Plaintiff was not eligible for SSI based on the records from September 1, 2017 to January 16, 2024. (*Id.*) To evaluate Plaintiff's claim of disability, the ALJ followed the sequential five-step analysis set forth in the SSA's regulations. *See* 20 C.F.R. § 404.1520(a). Specifically, the ALJ considered whether Plaintiff: (1) was performing substantial gainful activity during his period of alleged disability; (2) had a severe impairment; (3) had an impairment (or combination of impairments) that met or equaled the requirements of a listed impairment; (4) could return to his past relevant work; or (5) could perform other work that exists in significant numbers in the national economy. (AR 17–38.)

In relevant part, the ALJ's decision includes the following findings of fact and conclusions of law. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since September 1, 2017. (AR 21 (citing 20 C.F.R. §§ 404.1571 *et seq.*).)

At step two, the ALJ found that Plaintiff had the following severe impairments:

degenerative disc disease . . . of the lumbar spine, with bilateral sciatica and lumbosacral radiculitis; undifferentiated inflammatory polyarthritis; degenerative joint disease . . . of the right hip; [degenerative joint disease] of the right knee; bursitis of the right shoulder; plantar fascial fibromatosis of the right lower extremity; bilateral carpal tunnel syndrome; and morbid obesity.

(AR 21 (citing 20 C.F.R. § 404.1520(c), 416.920(c)).)

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

10

C.F.R. Part 404, Subpart P, Appendix 1." (AR 23–26 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).)  The ALJ next found that Plaintiff possessed the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. Sections 404.1567(a) and 416.927(a) that involved the following: occasional pushing and or pulling with the bilateral lower extremities; occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing ropes/ladders/scaffolds; frequent reaching in all directions, overhead, and laterally with the right upper extremity; frequent handling and fingering bilaterally; and no concentrated exposure to fumes, odors, dusts, gases, and workplace hazards, such as dangerous machinery, unprotected heights, and mechanical parts.  (AR 26.)

At step four, the ALJ found that Plaintiff had prior relevant work experience as a collections clerk, to which he could return.  (AR 35 (citing 20 C.F.R. § 404.1565 and 416.965).)

At step five, upon consideration of Plaintiff's age, education, work experience, and RFC, and the testimony of the vocational expert at the October 19, 2023 hearing, the ALJ found that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could perform including unskilled, sedentary occupations as an order clerk, scanner, and label maker." (AR 36–37 (citing 20 C.F.R. §§ 404.1569, 404.1569a).)  Accordingly, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from September 1, 2017, the alleged onset date, through the date of the decision."  (AR 37–38 (citing 20 C.F.R. § 404.1520(g)).)

On January 3, 2025, the Appeals Council denied Plaintiff's request to review the ALJ's decision.  (AR 1–5.)  In the written notification, the Appeals Council stated that Plaintiff's proposed reasons for why he disagreed with the ALJ's decision provided no basis to alter the ALJ's decision.  (*Id.*)

### III.    STANDARD OF REVIEW

In reviewing a Social Security disability decision, the Court is limited to determining whether the Commissioner applied the proper legal standard in evaluating the evidence and whether substantial evidence in the record supports the decision to deny benefits. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla of evidence[,] but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting the substantial evidence standard is "more than a mere scintilla," but "is not high"). "While the Commissioner's decision must contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based, 42 U.S.C. § 405(b)(1), there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (internal quotation marks omitted).

When reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2). "'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ).'" *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th

12

Cir. 1987)). The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by using an improper standard or misapplying the law. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)). Thus, reversing the denial of benefits is appropriate only if either (1) the record lacks substantial evidence supporting the ALJ's determination, or (2) the ALJ made an error of law. *Id.*

## IV.    ANALYSIS

Plaintiff challenges the ALJ's RFC determination and argues that there is insufficient evidence in the record to support the ALJ's finding that Plaintiff could work as a collections clerk, order clerk, scanner, or label maker given Plaintiff's need to use an assistive device like a cane. (Dkt. No. 1 at 2.) In response, Defendant argues that the ALJ's RFC and step five findings were supported by substantial evidence. (Dkt. No. 13 at 16–19.) For the reasons that follow, the undersigned recommends that the ALJ's RFC determination be affirmed.

The RFC determination is an agency-conducted administrative assessment that considers all relevant medical and other evidence to determine "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting . . . 8 hours a day, for 5 days a week . . . ." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996); *see also Caulkins v. Kijakazi*, No. 20-1060, 2022 WL 1768856, at *5 (4th Cir. June 1, 2022) (citing 20 C.F.R. § 416.945(a)(3)); 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)). The ALJ reviews "all of the relevant medical and other evidence" in the record in formulating the RFC and is charged with resolving conflicts in the evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.946(a)(3); *see* SSR 96-8p, 1996 WL 374184, at *5. "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The

second component requires the ALJ to "build an accurate and logical bridge" from the evidence in the record to the ALJ's RFC conclusions. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). That bridge does not need to be perfectly crafted and "specifically refer to every piece of evidence," *Reid v. Comm'r of Soc. Sec. Admin.*, 769 F.3d 861, 865 (4th Cir. 2014) (cleaned up), but it does need to allow for "meaningful review," *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). The ALJ then uses the RFC to determine whether the claimant can perform his past relevant work (step four), and whether the claimant can adjust to any other work existing in the national economy (step five). 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(5).

Here, the dispute between the parties reduces to whether the ALJ's RFC determination can be set aside because the ALJ failed to logically link Plaintiff's prior cane use and the medical evidence in support thereof, to the conclusion that Plaintiff could work as a collections clerk, order clerk, scanner, or label maker. (AR 37–38.) To prevail, Plaintiff must demonstrate that the ALJ "did not really engage in a proper analysis of whether the cane was medically necessary" (Dkt. No. 8 at 9), and that if the ALJ had engaged in such an analysis, the ALJ would have found that there was no work Plaintiff could perform.

In making the RFC determination, the ALJ expressly considered whether a cane was medically necessary and in doing so, relied on medical records discussing Plaintiff's gait, prior cane use, and prescribed treatment. With respect to Plaintiff's gait, the ALJ detailed how Plaintiff's orthopedic records, across multiple providers and several months, described Plaintiff as walking with a stable and normal gait, without the use of a cane. (AR 26-34, 359-60, 368, 371.) Notably, the ALJ found that no medical professional had prescribed a cane or other assistive device to Plaintiff. (AR 30.) Nor had Drs. Tulou and Hutcheson endorsed the need for a cane. (AR 32-33, 108-12, 121-25.) The ALJ found that Drs. Tulou and Hutcheson's sedentary RFC findings

14

were persuasive because those findings were supported by the doctors' findings of facts and consistent with the record as a whole showing that Plaintiff was treated conservatively for his spine impairment and his physical examinations revealed few abnormalities. (AR 32-33.) The ALJ also found that Dr. Masood's functional capacity assessment was somewhat persuasive, but not as persuasive as Drs. Tulou and Hutcheson's findings. (*Id.*)

Notwithstanding the ALJ's assessment of the medical records and weighing of the evidence, Plaintiff argues that this Court should set aside the ALJ's RFC finding because Dr. Masood opined a cane was medically necessary. Plaintiff's position is unsupported by the record. Dr. Masood did not find that Plaintiff required the assistance of a cane; he only noted that Plaintiff had attended the consultation with the aid of a cane, and the use of a cane resulted in Plaintiff having a normal gait. (AR 515.) Without more, "references in the record from physicians that a claimant presented with an assistive device are not sufficient; there must be an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary." *Williams v. Berryhill*, 2019 WL 2939258, at *13 (E.D. Va. June 17, 2019) (quotations omitted), *report and recommendation adopted sub nom.*, 2019, WL 2931936 (E.D. Va. July 8, 2019). There is no "unambiguous opinion" in this record that Plaintiff required an assistive device at all times, in all terrains, for any distance, such that the cane is a permanent fixture in Plaintiff's dominant hand preventing him from participating in gainful employment. *See SSR* 96-9p, 1996 WL 374185, at *7 (describing when an assistive device is medically necessary).

In any case, the ALJ accounted for the possibility that Plaintiff may need to use a cane by asking the vocational expert whether a person like Plaintiff could perform the identified occupations if he sometimes required a cane for ambulation and the vocational expert confirmed that he could. (AR 64.) The ALJ then found that "[e]ven if [Plaintiff] required the use of a cane

for ambulation, along with the other same limitations mentioned above, Dr. Nadine Henzes, an impartial vocational expert, testified that the claimant could still perform the three jobs cited above." (AR 37.)

For the reasons set forth herein, the undersigned recommends finding that the ALJ created "an accurate and logical bridge" between the evidence and his conclusions in the RFC determination, and that the RFC determination and the ALJ's step five findings are supported by substantial evidence and in accord with applicable laws and regulations. *Monroe*, 826 F.3d at 189.

## V.    RECOMMENDATION

Based on the foregoing, the undersigned recommends that the Court **DENY** Plaintiff's Motion for Summary Judgment (Dkt. No. 7), **GRANT** Defendant's Motion for Summary Judgment (Dkt. No. 12), and **AFFIRM** the final decision of the Commissioner.

## VI.    NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(b), must be filed within fourteen (14) days of its service. Failure to object within fourteen (14) days after being served with a copy of this Report and Recommendation may result in the waiver of any right to a *de novo* review of this Report and Recommendation and such failure shall bar you from attacking on appeal any finding or conclusion accepted and adopted by the district judge except upon grounds of plain error.

**ENTERED** this 25th day of February, 2026.

Alexandria, Virginia

_____/s/_____
Lindsey Robinson Vaala
United States Magistrate Judge

16